UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER MARTIN, )<br>    *Plaintiff*, )<br> )<br>v. )<br> )<br>GOOGLE LLC, )<br>    *Defendant*. ) | 3:25-CV-587 (SVN)<br><br><br><br><br><br>March 9, 2026 |

## RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

    Plaintiff Peter Martin brings this action against his former employer Defendant Google, LLC ("Google"), alleging violations of Section 510 of the Employee Retirement Income Security Act ("ERISA"), Connecticut's Wage Payment Law, Conn. Gen. Stat. § 31-72, breach of contract, and other state law claims. Plaintiff, formerly a sales representative for Google, alleges that he was deprived of compensation he was owed in connection with his pursuit and consummation of a sales contract between Google and Otis Elevator. He contends that, after he disclosed to Google that he had been diagnosed with Stage 4 colon cancer and began receiving treatment, the terms of his oral agreement to receive the commissions from the Otis Elevator contract were not honored, and he was ultimately terminated in part to avoid payment of his ERISA-covered benefits, including life insurance policy proceeds to which his beneficiaries would have been entitled if he had passed away while employed by Google. Google has filed a motion to dismiss Plaintiff's amended complaint in full, for failure to state a claim.

    For the reasons set forth below, the Court grants Google's motion to dismiss in full. Although Google has requested dismissal without leave to amend, the Court grants Plaintiff such leave except with respect to the fraudulent inducement claim.

I. **FACTUAL BACKGROUND**

A. The Complaint

The following factual allegations, taken from Plaintiff's amended complaint, are accepted as true for the purpose of this ruling and order. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In July of 2020, Plaintiff began employment with Google as an Enterprise Field Sales Representative, which involved managing and expanding Google's engagement with strategic accounts. Am. Compl., ECF No. 34 ¶ 13. Plaintiff joined as a member of the expanding sales team for the Google Cloud division. *Id.* ¶ 14. Beginning in 2023, sales representatives would sell both to existing customers, known as "Spender" clients, as well as to new customers, known as "Greenfield" clients. *Id.* ¶ 19. As of 2023, sales representatives could be a "Greenfield" representative, a "Spender" representative, or a "Hybrid" representative, the latter being responsible for selling to both existing and new customers. *Id.* ¶¶ 19–20.

Google implements three types of sales plans corresponding to each type of representative: the Greenfield Plan, Spender Plan, and Hybrid Plan. *Id.* ¶ 21. The Spender plan applies to sales representatives who "are not responsible or expected to onboard any new clients or customers; they are instead assigned existing accounts, and their job is to grow the revenue and upsell those particular clients with new or additional Defendant services." *Id.* ¶ 22. The Greenfield Plan "applies to sales representatives whose job is to land new clients/customers who were not previously doing active business with Defendant." *Id.* ¶ 23. The Hybrid Plan applies where the representative has both Greenfield and Spender accounts. *Id.* ¶ 24. Google internally published documents outlining the commission structures and bonus plans for the various plans. *Id.* ¶ 28.

In 2023, Google formally converted Plaintiff into a Spender sales plan representative, such that his compensation would be governed by the Spender plan. *Id.* ¶ 25. But at the time of this assignment, Plaintiff was already "multiple years into his pursuit of a new Greenfield account with

Otis Elevator." *Id.* ¶ 26. This contract, valued at $35 million, would be "the largest deal in the Eastern region, seventh largest in the Americas, and eleventh largest worldwide for Defendant that year." *Id.* ¶ 48.

Central to Plaintiff's claims is the allegation that, when converting Plaintiff to the Spender plan, his supervisors—Arun Parmar and Justin Srb—verbally "authorized an 'exception' to Plaintiff's Spender plan role," which allowed him to pursue the Otis Elevator account under the terms of the Greenfield plan, not the Spender plan. *Id.* ¶¶ 26–27. Plaintiff requested that this oral agreement be memorialized in writing, but Srb "rejected this request without explanation." *Id.* ¶¶ 39–40.

Under the Greenfield plan, sales representatives could earn a 500% maximum percentage of the eligible on-target variables that they achieve. *Id.* ¶ 30; Greenfield Plan, Ex. A, Def.'s Mot. to Dismiss, ECF No. 36-3 at 2–4.[1] Were Plaintiff to secure the Otis Elevator contract, it would meet or exceed "every criterion for maximum compensation under the [Greenfield] plan." ECF No. 34 ¶ 32. By Plaintiff's calculation, achievement of the five-year contract deal he was pursuing with Otis Elevator, if finalized, would result in at least $2 million in owed and earned commissions. *Id.* ¶ 47.

In July of 2023, Plaintiff was diagnosed with Stage 4 colon cancer, and "immediately" informed his management team, including Srb. *Id.* ¶¶ 55–56. Despite beginning chemotherapy

---

[1] Plaintiff contends that Google "labels their [Greenfield and Spender] Plans as trade secrets and confidential," and as a result, he did not file the Plans with his complaint or opposition brief. Pl.'s Opp'n, ECF No. 40 at 16. But Google has filed both compensation plans for the relevant years as exhibits to its motion to dismiss. *See* ECF No. 36-3 at 2–4; Spender Plan, Ex. B, Def.'s Mot. to Dismiss, ECF No. 36-4 at 2–4. While the Court normally may not consider matters outside of the pleadings on a 12(b)(6) motion to dismiss, it may consider documents incorporated by reference in the complaint. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002). Because both Plans are heavily referenced in Plaintiff's amended complaint, and as Plaintiff has not contested the accuracy of these exhibits, the Court properly considers those documents in deciding Google's motion to dismiss.

in August of 2023, Plaintiff "consistently honored all of his professional commitments and never missed a day of work due to his treatment." *Id.* ¶ 57.

Plaintiff ultimately secured the Otis Elevator contract in December 2023. *Id.* ¶ 41. But when Plaintiff approached Srb regarding his commissions for the Otis Elevator contract, Srb informed him that the verbal exception was "limited to allowing him to *sell* the Otis account, but not to be *paid* commissions on it." *Id.* ¶¶ 42 (emphasis in original), 71. Plaintiff alleges that Google made the oral "exception" allowing him to pursue Otis Elevator under the Greenfield compensation plan to "fraudulently induce Plaintiff into pouring his efforts into his pursuit of Otis Elevator, knowing full well that they would later refuse to pay him on the deal on the pretextual ground that he was no longer 'eligible' to receive a bonus from this account." *Id.* ¶ 37. Srb and Srb's manager did, however, receive revenue credit and commission for the Otis Elevator deal. *Id.* ¶¶ 68, 73.

Then, in early 2024, Plaintiff was informed that "his largest spending accounts" were being reassigned to other sales representatives, and he was instead given two smaller accounts to manage. *Id.* ¶ 79. Plaintiff's January 2024 performance review was a 2 out of 5, down from the previous year's 3 out of 5, and "made no reference to the Otis deal." *Id.* ¶ 81. On May 29, 2024, Srb informed Plaintiff that his role was being eliminated effective July 28, 2024, due to a "reduction in force." *Id.* ¶¶ 84–85. Plaintiff ultimately was terminated on July 31, 2024. *Id.* ¶ 91. As a result of his termination, Google "cancelled" all of Plaintiff's ERISA-covered life insurance benefits, which totaled nearly $4 million. *Id.* ¶¶ 93, 95, 98.

Plaintiff commenced this action on April 14, 2025. Compl., ECF No. 1. Following Google's initial motion to dismiss, Plaintiff proceeded to file the operative amended complaint, which Google has now moved to dismiss in full. Mot. to Dismiss, ECF No. 36. The amended

complaint alleges five claims: (1) violation of section 510 of ERISA; (2) violation of Conn. Gen. Stat. § 31-72; (3) fraudulent inducement; (4) breach of contract; and (5) unjust enrichment. ECF No. 34 at 17–22.

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief

5

will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

### A. Section 510 ERISA Claim

#### 1. *Plaintiff's Insufficient Allegations of ERISA Interference*

First, the Court concludes that Plaintiff's ERISA claim is not plausibly pleaded.

Plaintiff alleges that he was terminated with the intent to prevent him from attaining his ERISA-covered benefits, including life insurance proceeds to which his beneficiaries would have been entitled if he were still employed by Google at the time of his death. ECF No. 34 ¶ 106. But because Plaintiff has not sufficiently alleged that Google terminated his ERISA coverage with the specific intent to deny him his benefits under the statute, the Court grants Google's motion to dismiss as to this claim.

Section 510 of ERISA provides that "[i]t shall be unlawful for any person to discharge . . . a participant or beneficiary [of an employee benefit plan] . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." 29 U.S.C. § 1140. "Section 510 was designed primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Dister v. The Cont'l Grp., Inc.,* 859 F.2d 1108, 1111 (2d Cir. 1988) (internal citation omitted). "An essential element of plaintiff's proof under [§ 510 of ERISA] is to show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510." *Id.* (string citation omitted). "This standard does not require the plaintiff to show that interference with ERISA rights was the sole reason for his discharge, but it does require him to show more than the incidental loss of benefits as a result of a discharge." *Gandelman v. Aetna Ambulance Serv., Inc.*, 48 F. Supp. 2d 169, 172 (D.Conn.1999) (citing *Seaman v. Arvida Realty*

6

*Sales*, 985 F.2d 543, 546 (11th Cir.1993)); *see also Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 906 (2d Cir.1997) ("There is, however, no cause of action under section 510 where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment.") (citation and internal quotation omitted), *abrogated on other grounds as recognized by Citgo Petroleum Corp. v. Ascot Underwriting Ltd.*, 158 F.4th 368 (2d Cir. 2025).

Here, Plaintiff fails to plausibly allege that Google's termination of his employment was motivated, even in part, by a specific intent to deprive him of ERISA-covered benefits. Plaintiff's complaint alleges that Google "intentionally interfered with Plaintiff's attainment of rights under the ERISA-covered life insurance plan by terminating his employment shortly after learning of his Stage 4 colon cancer diagnosis." ECF No. 34 ¶ 106. Plaintiff maintains this is sufficient to demonstrate Google's motivation to interfere with his rights under section 510, given the connection between his serious illness and the likelihood he would succumb to it (rendering payment of his life insurance benefits necessary). Not so.

Even taking Plaintiff's allegations as true, they at most show that Google intentionally terminated him due to his cancer diagnosis, *a consequence of which* was termination of his ERISA benefits. Plaintiff's complaint does not take the further necessary step of alleging facts to support a plausible claim that Google's decision to terminate him was also motivated in any part by an independent desire to terminate Plaintiff's ERISA benefits. *See Jiggetts v. United Parcel Serv.*, No. 14-CV-8291 (AJN), 2017 WL 1164698, at *7 (S.D.N.Y. Mar. 27, 2017) ("Although the *effect* of a wrongful termination on the basis of a protected characteristic such as [a disability] may be that certain [] benefits do not vest, such termination does not state a claim under ERISA unless it is motivated by a desire to unlawfully prevent those benefits from vesting."); *cf. Trujillo v. PacifiCorp*, 524 F.3d 1149, 1160 (10th Cir. 2008) (holding that evidence about healthcare costs

and the likelihood of a payout of life insurance benefits increasing those costs was sufficient to create a genuine dispute of material fact at summary judgment).[2]

Plaintiff attempts to unshackle himself from his own alleged facts by arguing that Google's "stated reason for his termination—that his role was 'being eliminated' effective July 28, 2024—was pretextual." ECF No. 40 at 13. But the amended complaint alleges that Google used the reduction in force explanation as pretext for terminating him based on his *cancer diagnosis*, not for terminating him so that he would not be entitled to ERISA benefits. ECF No. 34 ¶ 106. Plaintiff alleges no facts beyond his conclusory statement that his termination was "designed" to deprive him of his ERISA benefits, which is insufficient to allow an inferrence that his termination was motivated by a desire to avoid providing Plaintiff ERISA benefits. *Id.*; *see Dister*, 859 F.2d at 1111 ("Plaintiff is required to prove more than the single fact that his termination precluded him from" enjoying ERISA-protected benefits; "he must demonstrate [Defendant's] unlawful purpose in firing him."). Here, Plaintiff's only *potentially* related allegation is highly conclusory. *See* ECF No. 34 ¶ 101 ("Defendant's actions in terminating Plaintiff's employment while he was undergoing cancer treatment, immediately after he had secured one of the company's largest deals worldwide was a clear attempt by Defendant to avoid potential liability under the ERISA-covered life insurance plan."). This allegation could just as easily be read to imply that

---

[2] Plaintiff argues that the *McDonnell-Douglas* burden-shifting analysis applies to his ERISA interference claim at the motion to dismiss stage. ECF No. 40 at 12. The U.S. Supreme Court has held that the "requirements for establishing a prima facie case under *McDonnell Douglas*" do not "apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). But *Swierkiewicz* was decided before the Supreme Court's decisions in *Iqbal* and *Twombly*. The Second Circuit has since reconciled this tension and held that in Title VII cases, "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015); *see also Goodman v. Merrill Lynch & Co., Inc.*, 716 F. Supp. 2d 253, 259 (S.D.N.Y. 2010) (same); *Connecticut Fair Housing Cntr. v. Corelogic Rental Property Sols., LLC*, 369 F. Supp. 3d 362, 376 (D. Conn. 2019) (same).

Google terminated Plaintiff to avoid honoring any alleged verbal agreement to pay Plaintiff commissions on the recently secured contract.

Additionally, Plaintiff's allegations send mixed messages about the severity of his diagnosis, which works against any inference that Google knew his cancer was likely terminal and ended his employment in order to prevent his beneficiaries from being eligible for the life insurance policy proceeds. *See, e.g.*, ECF No. 34 ¶¶ 57 (noting that Plaintiff "consistently honored all of his professional commitments and never missed a day of work due to his treatment"); ¶ 77 (Plaintiff "voluntarily chose to miss a day of his treatment to attend an in-person sales kickoff meeting in London").

Accordingly, Google's motion to dismiss is granted as to Plaintiff's ERISA claim, though Plaintiff will be afforded leave to amend.

2. *Supplemental Jurisdiction*

The Court has dismissed Plaintiff's sole claim brought under federal law. But Plaintiff has also alleged that the Court has original jurisdiction over his claims under 28 U.S.C. § 1332, the diversity jurisdiction statute. *See* ECF No. 34 ¶ 7. The Court agrees, as Plaintiff and Google are completely diverse and the amount in controversy exceeds $75,000. Thus, the Court has original jurisdiction over Plaintiff's state law claims and need not address whether to exercise supplemental jurisdiction over them.

B. Breach of Contract Claim

Next, the Court analyzes whether Plaintiff has sufficiently alleged a breach of contract claim; it concludes he has not.

Under Connecticut law, the "elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *AGW Sono Partners, LLC v. Downtown Soho, LLC*, 343 Conn. 309, 322 (2022) (quoting *CCT*

9

*Commc'ns, Inc. v. Zone Telecom, Inc.*, 327 Conn. 114, 133 (2017)). Regarding contract formation, "an agreement must be definite and certain as to its terms and requirements." *Presidential Cap. Corp. v. Reale*, 231 Conn. 500, 506 (1994) (quoting *Dunham v. Dunham*, 204 Conn. 303, 313 (1987)).

The amended complaint alleges Plaintiff was formally converted to a Spender representative in 2023, such that his compensation was governed by the terms of the Spender plan. ECF No. 34 ¶¶ 25–26, 28.³ But the Spender Plan is applicable—by Plaintiff's own allegations—only to existing business, not new contracts like the Otis Elevator contract. *Id.* ¶ 22; ECF No. 36-4 at 2–4. And Plaintiff has not identified any specific provision in the Spender Plan mandating he receive a commission for the Otis Elevator contract, or a term that would cover such a contract for new business. Thus, to the extent Plaintiff's breach of contract claim is based on an alleged breach of the compensation terms under the Spender plan, Plaintiff's breach of contract claim fails.

Plaintiff attempts to overcome this issue by alleging the existence of a separate verbal agreement permitting him to be compensated under the Greenfield plan for the Otis Elevator account. *See* ECF No. 34 ¶ 27 ("When converting him to the 'Spender' plan, Plaintiff's two supervisors -- Arun Parmar and Justin Srb -- both expressly authorized an 'exception' to Plaintiff's Spender plan role, permitting him to continue to pursue the Otis accounts under the terms of the 'Greenfield' sales plan").⁴ He alleges this was an oral agreement that was never reduced to writing, despite his requests. *Id.* ¶ 39.

---

³ Plaintiff's opposition notes that employees do not "formally sign or retain" the compensation plans. ECF No. 40 at 15. But as Plaintiff advances the Greenfield plan as the basis for his breach of contract claim, he treats it as a contract between the parties.

⁴ Plaintiff's amended complaint is inconsistent as to whether his role or his compensation plan was modified. *Compare* ECF No. 34 ¶ 27 (noting Plaintiff's managers "expressly authorized an 'exception' to Plaintiff's Spender plan *role* (emphasis added)) *with id.* ¶ 43 ("Defendant granted him an 'exception' from his 'Spender' *plan* to allow him to sell the Otis account." (emphasis added)). Ultimately, this is a distinction without a difference because Plaintiff's argument that he would be paid a commission under the Greenfield Plan for securing the Otis Elevator contract necessitates an exception to his compensation terms as outlined in the Spender Plan.

10

But because the alleged oral agreement was made contemporaneously with and modified the terms of the written Spender plan, which governed Plaintiff's commissions and bonuses—the parol evidence rule applies and bars the introduction of evidence of the alleged oral agreement. Connecticut's parol evidence rule "prohibits the introduction of evidence that varies or contradicts an exclusive written agreement." *Ruscito v. F–Dyne Elecs. Co., Inc.,* 177 Conn. 149, 160 (1979). Not all parol evidence is inadmissible—only that evidence "offered solely to vary or contradict the written terms of an integrated contract . . ." *HLO Land Ownership Assocs. Ltd. P'ship v. Hartford*, 248 Conn. 350, 358 (1999) (quoting *Jay Realty, Inc. v. Ahearn Development Corporation*, 189 Conn. 52, 56 (1983)). Notably, evidence "to prove a collateral oral agreement which does not vary the terms of the writing" is permissible. *Jay Realty, Inc.*, 189 Conn. at 56.

Plaintiff resists the application of the parol evidence rule by arguing that the oral agreement to apply the Greenfield Plan for the Otis Elevator contract does not actually vary or contradict any compensation plan's terms; the verbal agreement merely provides for the Greenfield plan to apply to the Otis Elevator contract, and the Spender plan to apply to the other contracts. ECF No. 40 at 17. But Google effectively counters that the amended complaint's language that Google created an "exception" to application of the Spender plan to Plaintiff's compensation is clear evidence of modification of the written Spender plan, insofar as that is the plan that the parties had agreed would govern Plaintiff's commissions and bonuses. ECF No. 41 at 12; *see also* ECF No. 34 ¶ 43 ("Defendant granted him an 'exception' from his 'Spender' plan to allow him to sell the Otis account." (emphasis added)). At oral argument, Plaintiff's counsel tried to back away from the amended complaint's use of the word "exception" to describe the supposed oral agreement regarding the Otis Elevator account, contending instead that there was a separately enforceable oral agreement to compensate Plaintiff for that account under the Greenfield plan. But the Court

11

must interpret the language of the amended complaint as is. Plaintiff himself frames the oral agreement as a variance to the written Spender plan's terms of compensation, made contemporaneously with Plaintiff's assignment to the Spender plan; based on this framing, he cannot escape application of the parol evidence rule.[5] *See* ECF No. 34 ¶ 27 ("*When converting him to the 'Spender'* plan, Plaintiff's two supervisors . . . both expressly authorized an 'exception' to the Plaintiff's Spender plan role. . . " (emphasis added)).

Under the parol evidence rule, the Court cannot consider the alleged oral promise made by Parmar and Srb to vary the written Spender plan's terms, and thus Plaintiff's breach of contract claim must be dismissed.

### C. Conn. Gen. Stat. § 31-72 Claim

Next, the Court analyzes whether Plaintiff has sufficiently alleged a claim under Conn. Gen. Stat. § 31-72. Because Plaintiff has not plausibly alleged his breach of contract claim which contends that he is owed additional wages, the Court likewise grants Google's motion to dismiss his wage claim, which is based on the same theory of underpayment.

Conn. Gen. Stat. § 31-72 provides that a prevailing employee "shall recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court." Conn. Gen. Stat § 31-72. The statute "does no more than require the payment of wages due under

---

[5] The Court notes that the parol evidence rule does not apply if the written contract is not "completely integrated," and "[w]hether a contract is deemed integrated oftentimes will turn on whether a merger clause exists in the contract." *Johnson v. Vita Built, LLC*, 217 Conn. App. 71, 84–86 (2022). The Spender plan does not appear to contain a merger clause or other language of integration, though it references a "2023 Cloud General Incentive Compensation Terms & Conditions" document that is not in the record before the Court. *See* ECF No. 36-4 at 2–4. As Plaintiff does not argue that the Spender plan was not fully integrated, the Court does not address this issue.

an agreement between an employer and an employee." *Connecticut v. YP Advert. & Publ'g LLC*, No. 3:16-CV-1424 (MPS), 2017 WL 810279, at *7 (D. Conn. Mar. 1, 2017) (citing Conn. Gen. Stat § 31-72). The statute is applicable to commissions and bonuses, as well as traditional wages. *See Butler v. Cadbury Beverages, Inc.*, No. 3:97-CV-2241 (EBB), 1999 WL 464527, at *2 (D. Conn. June 30, 1999) (noting that "wages" are defined under § 31-72 as including compensation for labor or services rendered by an employee, "whether the amount is determined on a time, task, piece, commission or other basis of calculation").

Because Plaintiff has not sufficiently alleged breach of the written Spender plan or Google's breach of an alleged separate verbal contract entitling him to earn a commission under the Greenfield plan for securing the Otis Elevator contract, Plaintiff's wage claim under § 31-72 must also be dismissed.

D.  <u>Unjust Enrichment Claim</u>

The Court also concludes that Plaintiff's unjust enrichment claim must be dismissed, as it sounds in breach of contract, as currently pleaded.

Under Connecticut law, "'[p]laintiffs seeking recovery for unjust enrichment must prove (1) that the [defendant] benefited, (2) that the defendant[] unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the [plaintiff's] detriment.'" *Joyce Van Lines, Inc. v. Lodmell*, No. 3:19-CV-0202 (JCH), 2019 WL 13215402, at *2 (D. Conn. Dec. 19, 2019) (quoting *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006)). A claim of unjust enrichment is an equitable remedy, and thus under state law, "[t]he lack of a remedy under a contract is a precondition to recovery." *United Coastal Indus., Inc. v. Clearheart Constr. Co., Inc.*, 71 Conn. App. 506, 513 (2002); *see also Alliance Grp. Servs., Inc. v. Grassi & Co.*, 406 F. Supp. 2d 157, 166 (D. Conn. 2005) ("Proof of a contract enforceable at law precludes the equitable remedy of unjust enrichment." (citation omitted)).

"Because lack of an express contract is a precondition to recovery based on unjust enrichment, allegations to the contrary incorporated into the count require dismissal." *North American Tech. Servs., Inc. v. V.J. Techs., Inc.*, No. 10-CV-1384 (AWT), 2011 WL 4538069, at *5–6 (D. Conn. Sept. 29, 2011) (citing *J & N Elec., Inc. v. Notkins*, No. 085020144, 2009 WL 1607591, at *2 (Conn. Super. Ct. May 20, 2009)); *see also Joyce Van Lines, Inc.*, 2019 WL 13215402, at *3 ("[o]ther courts addressing similar issues have held that a plaintiff cannot incorporate allegations of breach of an express contract into its unjust enrichment or quantum meruit claims because lack of an express contract is a precondition to recovery under both claims."); *Learning Care Grp., Inc. v. Armetta*, No. 3:13-CV-01540 (VLB), 2014 WL 12651264, at *20 (D. Conn. Sept. 30, 2014) ("a proper pleading of unjust enrichment or quantum meruit must include the allegation that no remedy is available to the claimant by action on a contract, and alternative pleadings must be set forth in separate counts that do not incorporate inconsistent claims.").

It is, of course, true that the Federal Rules of Civil Procedure "contemplate and permit a plaintiff to plead in the alternative." *Metzner v. Quinnipiac Univ.*, 528 F. Supp. 3d 15, 34–35 (D. Conn. 2021); *see also* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or . . . in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). And pleading breach of contract and unjust enrichment claims in the alternative is particularly common where there is a dispute about whether there is an enforceable contract. *See Metzner*, 528 F. Supp. 3d at 34–35 (allowing breach of contract and unjust enrichment claims to proceed where there was a "genuine dispute" about the existence of an enforceable contract);

*MedPricer.com Inc. v. Becton, Dickinson & Co.*, No. 3:13-CV-1545 (MPS), 2014 WL 3700992, at *3 (D. Conn. July 25, 2014) ("While proof of an enforceable contract might preclude application of an unjust enrichment theory, the plaintiff may be unable to prove an enforceable contract and, at least in the early stages of the proceedings, is entitled to plead inconsistent theories.") (quoting *William Raveis Real Est. v. Cendant Mobility Corp.*, No. CV-05-4002709-S, 2005 WL 3623815, at *2 (Conn. Super. Ct. Dec. 6, 2005)).

But here, Plaintiff's unjust enrichment claim fails for two reasons. First, despite identifying that it is pleaded "[i]n the alternative," it fully incorporates all of the amended complaint's allegations concerning breach of contract. *See* ECF No. 34 ¶ 129 ("Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein."). Thus, it impermissibly relies on allegations of breach of contract. And even if the Court sets aside that incorporating paragraph, Plaintiff's allegations within the unjust enrichment cause of action *specifically* invoke the alleged promise to pay him under "sales representative agreements and subsequent communication." *Id.* ¶ 131 ("Defendant promised to pay Plaintiff certain compensation for the work Plaintiff provided with respect to his employment as set forth in Defendant's sales representatives agreements under [sic] and subsequent communication and correspondence between Plaintiff and Defendant."). Plaintiff cannot pursue an unjust enrichment claim based on breaches of alleged contracts with Google, whether it was breach of the written Spender plan or the alleged oral promise to pay him under the Greenfield plan for the Otis Elevator deal. *See Bagwell v. World Wrestling Entm't*, No. 16-CV-1350 (JCH), 2017 WL 3579609, at *17–18 (D. Conn. May 5, 2017) (noting that an unjust enrichment claim "would need to allege that, if, for any reason, the [relevant contracts] are unenforceable, then

plaintiffs are entitled to [] payments."). Thus, the Court grants Google's motion to dismiss as to Plaintiff's unjust enrichment claim as well.

### E. Fraudulent Inducement

Finally, because Plaintiff has not sufficiently established that Google intended to fraudulently induce him when it made the verbal contract, his fraudulent inducement claim is dismissed without leave to amend.

To show fraudulent inducement, a party must show "(1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." *Antilla v. L.J. Altfest & Co., Inc.*, No. 3:09-CV-2128 (VLB), 2012 WL 3580477, at *15 (D. Conn. Aug. 17, 2012) (citing *Reid v. Landsberger*, 123 Conn App. 260, 281 (2010)). "[A] promise to do an act in the future, when coupled with a present intent not to fulfill the promise, is a false representation." *Paiva v. Vanech Heights Constr. Co.*, 159 Conn. 512, 515 (1970).

First, the Court concludes that Plaintiff has satisfied Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. To satisfy Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99–100 (2d Cir. 2023) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Here, Plaintiff alleges that, when switching Plaintiff to the Spender plan in 2023, Srb and Parmar authorized an exception to the agreement that Plaintiff's commissions would be governed by the Spender plan, so that his work pursuing Otis Elevator would be governed by the Greenfield plan. ECF No. 34 ¶ 27. He further alleges that this statement was fraudulent because Google apparently had no intention of paying

16

him under the Greenfield plan for the Otis Elevator deal. *Id.* ¶ 37. These allegations are sufficient to identify the statement that Plaintiff contends was fraudulent; the speakers; when the statement was made and in what context; and why Plaintiff believes the statement was fraudulent. Google has pointed to no case law, as suggested at oral argument, that the precise words of the conversation must be alleged.

But Plaintiff's fraudulent inducement claim fails for other reasons. First, Plaintiff has not alleged anything beyond conclusory statements suggesting that Srb and Parmar knew the statement about an exception was false when they made it. *Id.* ¶ 44 ("Defendant knew at the time it granted the 'exception' that it had no intention of paying Plaintiff the commissions he would earn under the Greenfield plan for the Otis deal."). Absent facts to support this bald allegation, it cannot suffice to show knowledge of the statement's falsity when it was made. Additionally, Plaintiff's amended complaint states that there was a "fraudulent reinterpretation" of the exception that Google had previously granted him to collect on commissions under the Greenfield plan. ECF No. 34 ¶ 120. The use of the term "reinterpretation" suggests that, at the time the exception was made, Google had a *different* understanding or interpretation than the one made at the time it allegedly failed to honor the oral agreement. Thus, Plaintiff has not demonstrated that, at the time of the agreement, Google intended to fraudulently induce Plaintiff into securing the Otis Elevator contract without any intention to honor its agreement.

Second, Plaintiff's fraudulent inducement claim is, essentially, a breach of contract claim labeled differently. Generally, "[a]llegations that a party has been defrauded because of a breach of contract are 'nothing more than breach of contract' allegations" and should be dismissed as duplicative of breach of contract claims. *Wilenta Feed, Inc. v. Arnold Food Co., Inc.,* No. 3:04-CV-1090 (RNC), 2006 WL 798916, at *3 (D. Conn. Mar. 29, 2006) (citing *Ge. Elec. Cap. Corp.*

17

*v. Directv, Inc.*, 94 F. Supp. 2d 190, 202 (D. Conn. 1999)). But "not every fraud claim is foreclosed in an action also involving a contract." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006). "The law "specifically recognizes causes of action for fraud in the inducement when the misrepresentation is collateral to the contract it induced," so that a "misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud." *Id.* (citing New York law); *see also United States Reg'l Econ. Dev. Auth., LLC v. Matthews*, No. 3:16-CV-1093 (CSH), 2017 WL 5992384, at *7 (D. Conn. Dec. 4, 2017) (noting that Connecticut and New York law on fraudulent inducement are similar). A misrepresentation may be collateral if it "do[es] not address common topics" with what the contract at issue contains. *Wall*, 471 F.3d at 417.

Here, the alleged misrepresentation—related to what compensation plan would cover Plaintiff's work for the Otis Elevator deal—is central to the agreement between the parties about Plaintiff's compensation, not collateral to it. Although *Wall* also involved the breach of alleged oral promises, there, the oral promises were truly collateral to the underlying settlement agreement in that they related to the provision of neutral job references—a topic not addressed by the settlement agreement. *Id.* Here, by contrast, the issue of how Plaintiff would be compensated for his work is the essence of the underlying agreement—the Spender plan—itself.

Thus, Google's motion to dismiss is granted as to Plaintiff's fraudulent inducement claim. As the alleged promise was not collateral to the relevant agreement between the parties, repleading this claim would be futile. Thus, the Court will not grant leave to amend the fraudulent inducement cause of action.

F.  Leave to Amend

Plaintiff has not formally requested leave to amend any dismissed claims. Google, for its part, has requested that Plaintiff be denied leave to amend, since Plaintiff already had the

opportunity to amend in response to Google's prior motion to dismiss, and availed himself of that opportunity by filing the amended complaint that did not properly address the arguments Google made in its initial motion to dismiss (which are largely identical to those made in the present motion). Under these circumstances, the Court would be within its discretion to deny leave to amend. *See Murphy Med. Assocs., LLC v. Yale Univ.*, 120 F.4th 1107, 1114 (2d Cir. 2024).

But the Court believes it is in the interests of justice to allow Plaintiff to amend his complaint with respect to all of his claims except his fraudulent inducement claim, as it is not beyond a doubt that Plaintiff can prove no set of facts that would entitle him to relief on those claims. *Id.* at 1115.[6] As to the fraudulent inducement claim, leave to amend would be futile based on the reasons for dismissal explained above. *See id.*

## IV. CONCLUSION

For the reasons described herein, Google's motion to dismiss is GRANTED in full. Plaintiff is granted leave to amend except with respect to his fraudulent inducement claim.

Any second amended complaint shall be filed by March 30, 2026. Any motion for leave to amend made after that deadline will be governed by Federal Rule of Civil Procedure 16's good cause standard, rather than Federal Rule of Civil Procedure 15. Google shall answer or otherwise respond to the second amended complaint within fourteen days of its filing. *See* Fed. R. Civ. P. 15(a)(3).

**SO ORDERED** at Hartford, Connecticut, this 9th day of March, 2026.

                                         */s/ Sarala V. Nagala*
                                         SARALA V. NAGALA
                                         UNITED STATES DISTRICT JUDGE

---

[6] At oral argument, Plaintiff's counsel noted Plaintiff intended to amend the complaint to add a disability discrimination claim that was recently administratively exhausted. This claim may be included in any amended complaint.