UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

PETER MARTIN,

        Plaintiff,

    v.

GOOGLE LLC,

        Defendant.

Case No. 3:25-cv-00587-SVN

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT GOOGLE LLC'S PARTIAL MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................................................. 1

II.    FACTUAL ALLEGATIONS ........................................................................................... 2

III.   ADMINISTRATIVE REQUIREMENTS ...................................................................... 5

IV.   LEGAL STANDARDS ................................................................................................... 6

V.    ARGUMENT .................................................................................................................. 7

       A.     Martin's ADA discrimination and retaliation claims are untimely. ........................ 7

       B.     Martin fails to state a claim under Section 502 of ERISA. .................................... 7

       C.     Martin fails to state a claim under Section 510 of ERISA. .................................... 8

       D.     Martin fails to state a claim for promissory estoppel. ........................................... 10

       E.     Martin fails to state a claim for breach of an implied-in-fact contract. ................. 13

       F.     Martin fails to state a claim for breach of the implied covenant of good
              faith and fair dealing. .......................................................................................... 14

       G.     Martin fails to state a wage claim under Conn. Gen. Stat. § 31-72. ..................... 15

       H.     Martin fails to state a claim for unjust enrichment or quantum meruit. ................ 15

       I.     Martin fails to state a claim for negligent misrepresentation. ............................... 16

VI.   CONCLUSION ............................................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Abira Med. Lab'ys, LLC v. Anthem Blue Cross Shield of Conn.*,
  No. 24-cv-872, 2025 WL 1825425 (D. Conn. July 2, 2025) (Nagala, J.) ........................ *passim*

*Aracich v. Bd. of Trs. of Emp. Benefit Funds of Heat & Frost Insulators Local 12*,
  629 F. Supp. 3d 103 (S.D.N.Y. 2022), *aff'd*, 2023 WL 4692316 (2d Cir. July
  24, 2023) ......................................................................................................................... 8

*Armstead v. Stop & Shop Cos., Inc.*,
  No. 01-cv-1489, 2002 WL 770732 (D. Conn. Apr. 19, 2002) .......................................... 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 6

*Burns v. Marley Co. Pension Plan for Hourly Emps. at Stockton, Ca.*,
  No. 08-cv-3763, 2009 WL 1193474 (E.D.N.Y. Apr. 30, 2009) .................................... 7, 8

*Cavelli v. New York City Dist. Council of Carpenters*,
  No. 10-cv-3708, 2011 WL 9155793 (E.D.N.Y. Mar. 7, 2011) ........................................ 9

*Conn. v. YP Advert. & Publ'g LLC*,
  No. 16-cv-1424, 2017 WL 810279 (D. Conn. Mar. 1, 2017) ......................................... 15

*Delaware State College v. Ricks*,
  449 U.S. 250 (1980) ......................................................................................................... 7

*Denis v. Unisys, LLC*,
  No. 25-cv-1845, 2026 WL 622625 (D. Conn. Mar. 5, 2026) ......................................... 14

*Dister v. Continental Grp., Inc.*,
  859 F.2d 1108 (2d Cir. 1988) ........................................................................................... 8

*Farzan v. Bridgewater Assocs.*,
  No. 16-cv-935, 2017 WL 354685 (D. Conn. Jan. 24, 2017), *aff'd*, 699 F.
  App'x 57 (2d Cir. 2017) .................................................................................................. 11

*Geysen v. Securitas Sec. Svcs. USA, Inc.*,
  322 Conn. 385 (2016) ..................................................................................................... 15

*Green v. Moldonado*,
  No. 17-cv-957, 2018 WL 5617545 (D. Conn. Oct. 30, 2018) ..................................... 6, 13

*Greene v. Grimes*,
No. 23-cv-453, 2024 WL 1341118 (D. Conn. Mar. 29, 2024) (Nagala, J.) ...............................6

*Harris v. LAZ Parking Ltd., LLC*,
No. 24-cv-889, 2025 WL 473654 (D. Conn. Feb. 12, 2025) (Nagala, J.) ..................................6

*Hood v. Aerotek, Inc.*,
No. 98-CV-1524, 2002 WL 294762 (D. Conn. Feb. 19, 2002)..................................................11

*Jiggetts v. United Parcel Serv.*,
No. 14-cv-8291, 2017 WL 1164698 (S.D.N.Y. Mar. 27, 2017) ..................................................8

*Lark v. Post Newsweek Stations Conn., Inc.*,
No. CV94 070 53 26, 1995 WL 491290 (Conn. Super. Ct. Aug. 9, 1995)...............................11

*Martin v. Google LLC*,
No. 25-cv-587, 2026 WL 657265 (D. Conn. Mar. 9, 2026) (Nagala, J.)............................12, 13

*Martino v. Seterus, Inc.*,
No. 17-cv-1326, 2018 WL 3553406 (D. Conn. July 23, 2018)..................................................14

*Owusu-Boateng v. U.S. Citizenship & Immigr. Servs.*,
No. 22-cv-812, 2025 WL 832198 (D. Conn. Mar. 17, 2025).......................................................2

*Stewart v. Cendant Mobility Servs. Corp.*,
837 A.2d 736 (Conn. 2003) ...............................................................................................10, 11

*Vollemans v. Town of Wallingford*,
103 Conn. App. 188 (Conn. App. Ct. 2007), *aff'd*, 956 A.2d 579 (Conn. 2008) .......................2

*Walczak v. Int'l Assoc. of Machinists & Aerospace Workers*,
No. 22-cv-927, 2023 WL 5334365 (D. Conn. Aug. 18, 2023) (Nagala, J.) ...............................5

*Wickes v. Westfair Elec. Co.*,
No. 19-cv-10673, 2021 WL 217318 (S.D.N.Y. Jan. 20, 2021)...................................................9

**Statutes**

29 U.S.C. § 1132(a)(1)(B)....................................................................................................7, 8

29 U.S.C. § 1140.......................................................................................................................8

42 U.S.C. § 2000e-5(e)(1).........................................................................................................7

42 U.S.C. § 12117(a).................................................................................................................7

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................................................6

iii

## I.      INTRODUCTION

This is Plaintiff Peter Martin's third bite at the apple. Following the Court's ruling on Defendant Google LLC's Motion to Dismiss the First Amended Complaint, Martin filed the Second Amended Complaint (the "SAC"), in which he again challenges his termination of employment and seeks to recover commissions he believes he is owed. The SAC fares no better than its prior iterations.

First, Martin's new discrimination and retaliation claims under the Americans with Disabilities Act ("ADA") are time-barred, because he filed his EEOC Charge more than 300 days after Google notified him of his termination of employment.

Next, Martin's new claim under Section 502 of ERISA fails, because he does not (and cannot) allege that his life insurance benefits were ever due. Indeed, Martin alleges that those benefits are payable to his spouse upon his *death* during his employment with Google—a triggering event he does not (and clearly cannot) allege has occurred.

Martin once again fails to adequately restate his claim under Section 510 of ERISA, because he asserts no facts to support his conclusory allegation that Google terminated his employment with the specific intent of depriving him of a plan benefit. Like its prior iterations, the SAC contains a web of contradictions regarding whether Google believed Martin's diagnosis was terminal. Nor does Martin allege either that Google had any financial sensitivity whatsoever to the alleged anticipated life insurance payout, or that Justin Srb—the alleged decisionmaker for his termination—was even aware of Martin's life insurance benefit.

Martin's promissory estoppel claim fails, because he does not allege a clear and definite promise to pay him for the Otis deal under the terms of a Greenfield plan. The claim is also barred under Connecticut's parol evidence rule.

1

Martin's claims for breach of an implied-in-fact contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and quantum meruit all fail because he has failed to allege conduct suggesting a contract was formed, that he was denied benefits of any contract, or that it was somehow "unjust" not to pay him for amounts to which he was not contractually entitled. Martin's Connecticut statutory wage claim fails for the same reason his quasi-contract claims fail: he has not adequately alleged that Google unlawfully withheld any wages to which he was entitled.

Finally, Martin's negligent misrepresentation claim fails, because he does not plausibly allege that Srb knew or should have known that the alleged verbal promise was false. Nor does Martin plausibly allege that he could have "reasonably relied" on an alleged verbal promise that he claims Srb specifically declined to put in writing.

For these reasons, pursuant to Federal Rule of Civil Procedure 12(b)(6), Google respectfully requests that this Court dismiss Counts One, Two, and Five through Twelve of the Second Amended Complaint, with prejudice.[1]

## II.    FACTUAL ALLEGATIONS[2]

Peter Martin joined Google in July 2020 as an Enterprise Field Sales Representative ("FSR"). (SAC ¶ 24.) This was a sales role, which "involved managing and expanding [Google's] engagement with strategic accounts." (*Id.*)

---

[1] In this Motion, Google does not seek to dismiss Martin's claims under the Connecticut Fair Employment Practices Act ("CFEPA"), because Martin's CFEPA claims—unlike his ADA claims—are timely. *See Vollemans v. Town of Wallingford*, 103 Conn. App. 188, 219 (Conn. App. Ct. 2007) (unlike the ADA, CFEPA's filing period "commences upon actual cessation of employment, rather than notice thereof"), *aff'd*, 956 A.2d 579 (Conn. 2008).

[2] As it must at this procedural juncture, and solely for purposes of this motion, Google "accept[s] the well-pleaded factual allegations of the complaint as true . . . ." *Owusu-Boateng v. U.S. Citizenship & Immigr. Servs.*, No. 22-cv-812, 2025 WL 832198, at *3 (D. Conn. Mar. 17, 2025).

Martin alleges that at Google, new customers are known as "Greenfield" accounts, and existing customers are known as "Spender" accounts. (*Id*. ¶ 26.) FSRs are assigned "different compensation plans" depending on the types of customers they are assigned. (*Id*. ¶ 35.) The "Greenfield compensation plan," for example, "provides lucrative financial incentives for securing new business" for Google, and is allegedly "more lucrative than both the Spender and Hybrid compensation plans." (*Id*. ¶ 36.)

Initially, and through 2022, Martin "was assigned to the Greenfield 'New England' territory." (*Id*. ¶ 28.) Accordingly, his compensation was governed by the "Greenfield compensation plan." (*Id*. ¶¶ 35–36.) The written Greenfield plan governing Martin's 2022 commissions was previously submitted to this Court and is incorporated by reference herein. (ECF No. 36-3.)

In 2023, Google converted Martin to "a Spender account sales representative." (SAC ¶ 38.) Accordingly, his compensation was governed by the Spender compensation plan. (*Id*. ¶¶ 35–36.) The written Spender plan governing Martin's 2023 commissions was previously submitted to this Court and is incorporated by reference herein. (ECF No. 36-4.) Martin's 2023 Spender plan incorporates by reference the 2023 Cloud General Incentive Compensation Terms & Conditions ("2023 T&C"), attached to the Declaration of Buddy Peltier ("Peltier Decl.") as **Exhibit A**.

The 2023 T&C states, in relevant part, that it "supersedes all other sales compensation policies or guidelines, unless otherwise stated. *If there are any conflicting policy statements or communications from anyone at the Company including the Seller's manager, this policy shall take precedence*." (*Id*. at 3 (emphasis added).)

"At the time" of Martin's conversion to a Spender account sales representative, he was already "pursuing a Greenfield account: Otis Elevator." (SAC ¶ 39.) Despite Martin's status as a

3

Spender account sales representative, his supervisors—Arun Parmar and Justin Srb—allegedly "expressly authorized" Martin "to continue pursuing the Otis Account," promising that Martin's potential acquisition of the Otis Account "would be governed by the lucrative Greenfield compensation plan." (*Id*. ¶¶ 40–41.) Srb subsequently characterized this as "a limited 'exception' from [Martin's] Spender status to allow him to sell the Otis Account . . ." (*Id*. ¶ 93.)

Martin proposed to Srb that this verbal promise be memorialized in writing. (*Id*. ¶ 52.) Srb "rejected [Martin's] request without explanation." (*Id*. ¶ 53.)

Martin ultimately secured the Otis Account in December 2023. (*Id*. ¶ 55.) However, Google allegedly broke its verbal promise to pay him "commissions on it." (*Id*. ¶ 57.) Allegedly, this was also a breach of Google's "FY 2023 Greenfield Plan" (*id*. ¶ 72), specifically, "Plan 1002 Details: FSR/CE Greenfield NAL." (*Id*. ¶¶ 63–72.)

On July 20, 2023, Martin was diagnosed with Stage 4 colon cancer. (*Id*. ¶ 81.) He "immediately informed his supervisors," including Srb and Parmar. (*Id*. ¶¶ 82–83.) In August 2023, Martin inquired with Parmar into "*the process for requesting* reasonable accommodations for his cancer treatment." (*Id*. ¶ 83 (emphasis added).) Martin does not allege that he *required* or *obtained* a reasonable accommodation; rather, he "consistently honored all his professional commitments, and never missed a day of work due to his treatment." (*Id*. ¶ 84.) Nevertheless, Google allegedly "knew, or should have known," that Martin's diagnosis was "likely terminal"—based on undescribed "discussions" that Martin had with Parmar and Srb (*id*. ¶ 86)—notwithstanding that Martin was "a dedicated and high-performing" FSR whose work performance was at all times "exceptional." (*Id*. ¶ 4.)

On May 29, 2024, almost one year after Martin's disclosure of a cancer diagnosis, Srb gave Martin notice of his termination of employment, effective July 28, 2024. (*Id*. ¶ 120.) Martin

4

considers his termination of employment Google's "final discriminatory step . . . ." (*Id*. ¶ 130.) Although Martin subsequently received emails from Google purporting to assign him to sales territories (*id*. ¶ 124), he understood these to be nothing more than "generate[d] automated emails" designed only to "ma[k]e it *appear* as though he was not being terminated after all." (*Id*. ¶ 128 (emphasis added).) His last day of employment with Google was July 31, 2025. (*Id*. ¶ 24.)

Under the terms of Martin's life insurance policy with Google, if he "were to die during his employment," his spouse would receive "a combined total of $3,979,150 in life insurance benefits." (*Id*. ¶ 135.) Martin believes that by terminating his employment, Google—an allegedly "multi-trillion-dollar company"—intended to avoid paying out this sum. (*Id*. ¶¶ 136–137.)

## III.     ADMINISTRATIVE REQUIREMENTS

On April 3, 2025, Martin filed an EEOC Charge alleging Google's violation of the ADA. (SAC ¶ 14; Declaration of Kaveh Dabashi ("Dabashi Decl."), Exh. A.) The EEOC issued Martin's Notice of Right to Sue on September 29, 2025. (SAC ¶ 15.)

On December 9, 2025, Martin and Google entered a tolling agreement that tolled Martin's deadline to file his ADA claims until 30 days after a decision was entered on Google's Motion to Dismiss the First Amended Complaint. (*Id*. ¶ 16.) The tolling agreement provides, however, that "[t]o the extent that any causes of action, including those tolled herein, asserted against Defendant were already time-barred prior to the effective date of this tolling agreement, such causes of action are not subject to this tolling agreement, and are not revived by this tolling agreement." (Dabashi Decl., Exh. B.)[3]

---

[3] On a motion to dismiss, this Court may consider "documents incorporated by reference in the complaint," including Martin's EEOC Charge, the parties' tolling agreement, and the at-issue compensation plans. *Walczak v. Int'l Assoc. of Machinists & Aerospace Workers*, No. 22-cv-927, 2023 WL 5334365, at *1 n.2 (D. Conn. Aug. 18, 2023) (Nagala, J.).

## IV.    LEGAL STANDARDS

The Federal Rules of Civil Procedure require dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss, this Court "is not 'bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions' . . . and 'a formulaic recitation of the elements of a cause of action will not do.'" *Greene v. Grimes*, No. 23-cv-453, 2024 WL 1341118, at *4 (D. Conn. Mar. 29, 2024) (Nagala, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Consequently, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. LAZ Parking Ltd., LLC*, No. 24-cv-889, 2025 WL 473654, at *2 (D. Conn. Feb. 12, 2025) (Nagala, J.) (citing *Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 555)).

When amending a complaint, the plaintiff may not "edit[] his recitation of facts in order to avoid the adverse affect of the Court's ruling dismissing his claim," because "a party's pleadings are admissible as admissions, either judicial or evidentiary, as to the facts alleged in that pleading." *Green v. Moldonado*, No. 17-cv-957, 2018 WL 5617545, at *2 (D. Conn. Oct. 30, 2018) (citation omitted). In other words, a "party cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories." *Id*. (proposed amendment that altered, rather than supplemented, original allegations was "simply an effort by Plaintiff to revive a dismissed claim"; amendment was not "sought in good faith").

6

## V.    ARGUMENT

### A.    Martin's ADA discrimination and retaliation claims are untimely.

ADA plaintiffs must file a Charge with the EEOC within 300 days of the alleged discriminatory action. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a). Martin's ADA discrimination and retaliation claims are untimely, because he filed his Charge on April 3, 2025 (Dabashi Decl., Exh. A), 309 days after Google's May 29, 2024 notification to Martin of his termination of employment, the most recent alleged discriminatory action. (SAC ¶¶ 120, 130.) His ADA discrimination and retaliation claims should therefore be dismissed. *See Delaware State College v. Ricks*, 449 U.S. 250, 256–58 (1980) (period for filing an EEOC Charge begins on the day an employee receives notice of an adverse employment action rather than on the effective date of that action); *Armstead v. Stop & Shop Cos., Inc.*, No. 01-cv-1489, 2002 WL 770732, at *4 (D. Conn. Apr. 19, 2002) (dismissing ADA claim as untimely because plaintiff filed EEOC Charge more than 300 days after he received "notice that defendant . . . was terminating him").

### B.    Martin fails to state a claim under Section 502 of ERISA.

Section 502 of ERISA authorizes the participant in an employee benefit plan to sue "to recover benefits due to him under the terms of his plan . . . ." 29 U.S.C. § 1132(a)(1)(B). To survive a motion to dismiss this claim, the plaintiff must allege that he is entitled to benefits under the terms of the plan. *See Burns v. Marley Co. Pension Plan for Hourly Emps. at Stockton, Ca.*, No. 08-cv-3763, 2009 WL 1193474, at *4 (E.D.N.Y. Apr. 30, 2009) (dismissing Section 502 claim because "plaintiff has failed to allege that he is entitled to benefits under the terms of the plan").

Martin does not—and cannot—allege that benefits under his life insurance plan are due, because those benefits are payable only if Martin "were to die during his employment" with Google. (SAC ¶ 134.) Because Martin cannot allege that he has died during his employment (in

7

fact, he remains alive to this day), his Section 502 claim must be dismissed. *See* 29 U.S.C. § 1132(a)(1)(B); *Burns*, 2009 WL 1193474, at *4.

**C.    Martin fails to state a claim under Section 510 of ERISA.**

Under Section 510 of ERISA, it is "unlawful for any person to discharge . . . a participant or beneficiary" of an employee benefit plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140.

Because every employment loss potentially results in lost employee benefits, "the existence of a *specific intent* to interfere with an employee's benefit rights is *critical* in § 510 cases . . . ." *Dister v. Continental Grp., Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988) (emphasis added). If this were not required, ERISA would "guarantee every employee a job until he or she has fully vested into a company's benefit plan"—which is not the law. *Id*. ("no ERISA cause of action lies where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment").

Thus, courts in this Circuit routinely dismiss Section 510 claims where the plaintiff makes only conclusory allegations that his employer terminated his employment with the intent of interfering with an ERISA benefit. *See*, *e.g.*, *Jiggetts v. United Parcel Serv.*, No. 14-cv-8291, 2017 WL 1164698, at *7 (S.D.N.Y. Mar. 27, 2017) (granting motion to dismiss Section 510 claim, where plaintiff "makes a single conclusory allegation that he was fired, three years before his pension benefits would vest, *in order* to prevent them from vesting") (emphasis in original); *Aracich v. Bd. of Trs. of Emp. Benefit Funds of Heat & Frost Insulators Local 12*, 629 F. Supp. 3d 103, 113 (S.D.N.Y. 2022) (granting motion to dismiss Section 510 claim, because "absent additional factual support, plaintiff's conclusory allegation that defendants 'engaged in a scheme to intentionally interfere with the contractual and vesting rights and benefit entitlements of the Plaintiff' is

8

inadequate to plead defendants acted with the requisite discriminatory or retaliatory intent"), *aff'd*, 2023 WL 4692316 (2d Cir. July 24, 2023); *Wickes v. Westfair Elec. Co.*, No. 19-cv-10673, 2021 WL 217318, at *10 (S.D.N.Y. Jan. 20, 2021) (granting motion to dismiss Section 510 claim, because the court "simply [could] not conclude, based upon the conclusory allegations in [the] Complaint . . . that any action was taken by Defendants with the intent of preventing Plaintiff from attaining health benefits"); *Cavelli v. New York City Dist. Council of Carpenters*, No. 10-cv-3708, 2011 WL 9155793, at *5 (E.D.N.Y. Mar. 7, 2011) (granting motion to dismiss Section 510 claim, because plaintiffs failed to plead "facts plausibly showing that [defendant] was at least partially motivated by a desire to deprive them of their pension benefits").

Martin's failure to nudge this claim across the plausibility threshold continues. He now vaguely alleges, for the first time in the *third* iteration of his Complaint, undescribed "discussions" he had with Srb and Parmar from which they "knew, or should have known," that Martin's diagnosis was "likely terminal." (SAC ¶ 86.) But, as in prior iterations of his Complaint, Martin's allegations are at odds with themselves. He claims Google should have known his diagnosis was terminal, but simultaneously alleges that he was "a dedicated and high-performing" employee whose work performance was at all times "exceptional" (*id*. ¶ 4), and that he "consistently honored all his professional commitments, and never missed a day of work due to his treatment." (*Id*. ¶ 84.) He also alleges that, in August 2023, he inquired with Parmar into "*the process for requesting* reasonable accommodations for his cancer treatment" (*id*. ¶ 83 (emphasis added)), but never alleges that he actually *required* or *obtained* a reasonable accommodation. Adding further confusion to his pleading, Martin simultaneously alleges he "never missed a day of work due to his treatment" (*id*. ¶ 84) but also took "intermittent medical leave for cancer surgery and

treatment." (*Id*. ¶ 132.) This web of self-contradictory allegations fails to raise an inference that Google was aware that Martin's cancer diagnosis was terminal.

Nor does Martin allege that Google was at all financially sensitive to paying out the life insurance benefits due to his spouse upon his death. On the contrary, Martin alleges that, upon his death, his spouse would receive "a combined total of $3,979,150 in life insurance benefits." (*Id*. ¶ 135.) In the same breath, Martin alleges that Google is "a *multi-trillion-dollar* company." (*Id*. ¶ 136 (emphasis added).) It is not plausible that an alleged "multi-trillion-dollar company" is sensitive to the prospect of paying out $3.9 million in life insurance benefits. Nor does Martin allege that Srb, who allegedly terminated Martin's employment (*id*. ¶ 120), was even *aware* of Martin's life insurance policy or the value of its alleged benefits. Surely if Google had the "specific intent" to deprive Martin of his life insurance benefits, Martin could and would allege that the decisionmaker for his termination was at least aware of that policy and its benefits. But Martin alleges no such thing.

Thus, because Martin still fails to allege Google's specific intent to deprive him of ERISA benefits in non-conclusory terms, his Section 510 claim must be dismissed.

### D.    Martin fails to state a claim for promissory estoppel.

#### 1.    *Martin fails to plead a clear and definite promise.*

"A fundamental element of promissory estoppel is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." *Abira Med. Lab'ys, LLC v. Anthem Blue Cross Shield of Conn.*, No. 24-cv-872, 2025 WL 1825425, at *14 (D. Conn. July 2, 2025) (Nagala, J.). According to the Supreme Court of Connecticut, to satisfy the "clear and definite" requirement, "the promise must reflect a present intent to commit as distinguished from a mere statement of intent to contract in the future." *Stewart v. Cendant Mobility Servs. Corp.*,

10

837 A.2d 736, 742 (Conn. 2003). A "mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance" and is therefore "not sufficiently promissory." *Id*. at 742–43.

Martin fails to allege a clear and definite promise to pay him commissions on the Otis deal under the terms of a Greenfield plan. On the contrary, Srb allegedly *declined* to put this verbal promise in writing "without explanation" (SAC ¶¶ 52–53), suggesting "no real commitment" to pay Martin those commissions. *Stewart*, 837 A.2d at 743. A promise that the promisor expressly declines to put in writing is neither "clear" nor "definite."

For this reason alone, Martin's promissory estoppel claim fails. *See Abira*, 2025 WL 1825425, at *14 (granting motion to dismiss promissory estoppel claim, where plaintiff failed "to plausibly allege a clear and definite promise") (Nagala, J.).

> 2.    *The parol evidence rule bars consideration of the alleged verbal promise.*

Martin's promissory estoppel claim fails independently under the parol evidence rule, which forbids consideration of alleged verbal statements "outside the four corners of the contract" to "vary or contradict the terms of an integrated contract." *Farzan v. Bridgewater Assocs.*, No. 16-cv-935, 2017 WL 354685, at *12 (D. Conn. Jan. 24, 2017), *aff'd*, 699 F. App'x 57 (2d Cir. 2017). Oral evidence "offered solely to vary or contradict the written terms of an integrated contract is . . . legally irrelevant." *Id*.

The rule applies with equal force to promissory estoppel claims. *See Hood v. Aerotek, Inc.*, No. 98-CV-1524, 2002 WL 294762, at *5 (D. Conn. Feb. 19, 2002) ("Allowing promissory estoppel when the alleged promise contradicts a promise located in an integrated agreement would provide an end-run around the parol evidence rule"); *Lark v. Post Newsweek Stations Conn., Inc.*, No. CV94 070 53 26, 1995 WL 491290, at *3 (Conn. Super. Ct. Aug. 9, 1995) (granting motion to

dismiss promissory estoppel claim, where plaintiff was "attempting to use the discussions that occurred during the negotiations of his contract as a basis for his promissory estoppel claim. A party does not have a cause of action for promissory estoppel where an existing contract exists, is alleged and appears to be enforceable").

Here, Martin alleges that "[a]t the time" of his conversion to a Spender plan, he was already pursuing the Otis Account (SAC ¶ 39), but that "[d]espite" that conversion, Martin's supervisors "expressly authorized" him "to continue pursuing the Otis Account," promising that Martin's potential acquisition of the Otis Account "would be governed by the lucrative Greenfield compensation plan." (*Id*. ¶¶ 40–41.) Srb subsequently characterized this as "a limited 'exception'" to Martin's Spender plan "to allow him to sell the Otis Account . . ." (*Id*. ¶ 93.)[4]

Moreover, the 2023 T&C incorporated by reference into Martin's 2023 Spender plan states, in relevant part, that it "supersedes all other sales compensation policies or guidelines, unless otherwise stated. *If there are any conflicting policy statements or communications from anyone at the Company including the Seller's manager, this policy shall take precedence*." (Peltier Decl., Exh. A at 3 (emphasis added).)

Martin's allegations, paired with the plain integration language of the 2023 T&C incorporated by reference into Martin's 2023 Spender plan, require a textbook application of the parol evidence rule. Martin's promissory estoppel claim, premised on the verbal promise that Srb allegedly later characterized as "a limited 'exception'" to the Spender plan (*id*. ¶ 93), must be

---

[4] This Court has already found that Martin's careful wordsmithing vis-à-vis the alleged verbal exception to his "plan" versus "role" (and now, "status") is "a distinction without a difference," because either ultimately "necessitates an exception to his compensation terms as outlined in the Spender Plan." *Martin v. Google LLC*, No. 25-cv-587, 2026 WL 657265, at *6 n.4 (D. Conn. Mar. 9, 2026) (Nagala, J.). Martin, too, concedes that "different compensation plans are applicable to different categories of sales," *i.e.*, Greenfield, Spender, and Hybrid plans. (SAC ¶¶ 35–36.)

dismissed. *See Martin*, 2026 WL 657265, at *6 ("because the alleged oral agreement was made contemporaneously with and modified the terms of the written Spender plan, which governed Plaintiff's commissions and bonuses—the parol evidence rule applies and bars the introduction of evidence of the alleged oral agreement").

In the SAC, Martin attempts to avoid application of the parol evidence rule by deemphasizing the contemporaneity of his conversion to the Spender plan with Srb's alleged verbal promise of an exception to that plan. He now conspicuously dispenses with the allegation featured in every prior iteration of the Complaint that the verbal promise occurred "*[w]hen converting him to the 'Spender' plan . . .*" (Original Compl. (ECF No. 1) ¶ 27; First Amend. Compl. (ECF No. 34) ¶ 27 (emphasis added).) Martin has also carefully reduced his use of the word "exception" to describe the alleged verbal promise, which appears 11 times in prior iterations of the Complaint. (Original Compl. ¶¶ 27–29, 33–36, 62, 109, 114–115; First Amend. Compl. ¶¶ 27, 37–38, 42–45, 71, 114, 119, 120.) He cannot escape his own prior allegations, though. *See Green*, 2018 WL 5617545, at *2 (a "party cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version"). The parol evidence rule applies, and forecloses Martin's promissory estoppel claim.

### E.    Martin fails to state a claim for breach of an implied-in-fact contract.

An implied-in-fact contract "is the same as an express contract, except that assent is not expressed in words, but is implied from the conduct of the parties." *Abira*, 2025 WL 1825425, at *11 (Nagala, J.). To assess whether the claim has been sufficiently pled, "the Court examines the conduct of the parties, in light of the alleged context and circumstances." *Id*.

None of the conduct alleged in the SAC suggests that Martin and Google formed an implied-in-fact contract. On the contrary, Martin alleges that he and Google entered an *actual*

contract in 2023: the written Spender plan that governed his commissions. (SAC ¶¶ 35–36, 38.) And the 2023 T&C incorporated into Martin's Spender plan expressly *disclaims* any communications from a seller's manager that conflict with a seller's written plan. (Peltier Decl., Exh. A at 3.) These allegations fail to suggest "that the parties' conduct amounted to an implied-in-fact contract" under which Google would pay Martin for the Otis deal *off plan*. *Abira*, 2025 WL 1825425, at *11 (granting motion to dismiss claim for implied-in-fact contract, where plaintiff failed to allege facts giving rise "to the reasonable inference that the parties had an implied-in-fact contract" based on "the conduct of the parties").

F.      **Martin fails to state a claim for breach of the implied covenant of good faith and fair dealing.**

Implied in every contract is a duty of good faith and fair dealing, which requires that neither party "do anything that will injure the right of the other to receive the benefits of the agreement." *Denis v. Unisys, LLC*, No. 25-cv-1845, 2026 WL 622625, at *4 (D. Conn. Mar. 5, 2026). Martin fails to allege that Google ran afoul of this implied covenant.

Martin fails to allege that he was deprived of the benefits of any written contract. He cites to a commission plan entitled "Plan 1002 Details: FSR/CE Greenfield NAL" (or the "FY 2023 Greenfield Plan") (SAC ¶¶ 63–72), but acknowledges that he was not actually offered this written plan. On the contrary, Martin alleges that in 2023, his compensation was governed by the *Spender* compensation plan. (*Id*. ¶¶ 35–36, 38 (emphasis added).) Moreover, the alleged provisions Martin describes merely delineate how commissions would be calculated *if he were* entitled to commissions on the Otis deal according to the Greenfield plan. (*Id*.) He points to no contractual duty to pay him those commissions in the first place. *See Martino v. Seterus, Inc.*, No. 17-cv-1326, 2018 WL 3553406, at *8 (D. Conn. July 23, 2018).

14

Nor does the parol evidence rule permit this Court to consider whether Martin was deprived of the benefit of an alleged verbal promise, for the reasons described in Section V(D)(2).

### G.      Martin fails to state a wage claim under Conn. Gen. Stat. § 31-72.

Connecticut's wage law, Conn. Gen. Stat. § 31-72, "does no more than require the payment of wages due under an agreement between an employer and an employee." *Conn. v. YP Advert. & Publ'g LLC*, No. 16-cv-1424, 2017 WL 810279, at *7 (D. Conn. Mar. 1, 2017). "Section 31-72 merely provides a remedy for violations of an existing wage agreement, and confers no rights above and beyond the agreement." *Id*. (citing *Geysen v. Securitas Sec. Svcs. USA, Inc.*, 322 Conn. 385, 393–94 (2016)).

Martin identifies no provision of any agreement requiring Google to pay him commissions on the Otis deal under the terms of a Greenfield plan, either under a theory of contract or quasi-contract. Thus, his Section 31-72 claim for wages fails.

### H.      Martin fails to state a claim for unjust enrichment or quantum meruit.

"Quantum meruit allows for recovery out of the need to avoid unjust enrichment . . . ." *Abira*, 2025 WL 1825425, at *15. To recover under these theories (which Martin pleads as separate counts, but which this Court commonly addresses under a single standard), the plaintiff must plead that (1) the defendant was benefited, (2) the defendant unjustly did not pay the plaintiff for that benefit, and (3) the failure of payment was to the plaintiff's detriment. *Id*.

Martin pleads these claims "in the alternative" to his quasi-contract claims. (SAC at Counts Nine and Twelve.) But that is precisely their downfall: Martin fails to allege how—*absent* a contractual duty to do so—Google's failure to pay him commissions for the Otis deal under the terms of a Greenfield plan was unjust. If Google never agreed to pay Martin the commissions he

15

seeks, why is it "unjust" for Google not to pay him those commissions? Martin fails to plausibly answer this question.

Martin's attempt to construct an inference of injustice, by alleging that his "reliance on [Google's] promises was both reasonable and foreseeable given the industry context, the parties' course of dealing, and [Google's] specific directives," fares no better. (SAC ¶ 225.) Martin does not allege what he means by these generalized terms, or how they suggest that Google acted unjustly. Martin's quantum meruit and unjust enrichment claims therefore fail as a matter of law.

## I.    Martin fails to state a claim for negligent misrepresentation.

To state a claim for negligent misrepresentation, the plaintiff must allege that (1) the defendant made a misrepresentation of fact, (2) which the defendant knew or should have known was false, and (3) the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result. *Abira*, 2025 WL 1825425, at *13 (Nagala, J.). Martin fails to state this claim.

In support of this claim, Martin merely alleges—in purely conclusory fashion—that Srb "knew at the time [he] promised Greenfield compensation to Plaintiff to pursue the Otis Elevator deal that [Google] had no intention of paying Plaintiff the commissions he would earn under the Greenfield compensation plan." (SAC ¶ 59.) Martin alleges no actual statements, conduct, or other factual basis to infer that Srb "knew or should have known" that the alleged promise was false. He merely speculates, which is insufficient. *See Abira*, 2025 WL 1825425, at *13 (granting motion to dismiss negligent misrepresentation claim, where plaintiff offered "few, if any, allegations to make plausible the proposition that Defendant knew or should have known such a promise . . . was false").

16

Martin also fails to plausibly allege that he "reasonably relied" on Srb's verbal promise. The SAC suggests quite the opposite: Martin *un*reasonably relied on a verbal promise that Srb expressly declined to put in writing "without explanation". (SAC ¶ 53). This claim must be dismissed for this independent reason, too.

## VI.    CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court dismiss Counts One, Two, and Five through Twelve of the Second Amended Complaint, with prejudice.

Dated: April 10, 2026                                              PAUL HASTINGS LLP


_____
Emily R. Pidot (*pro hac vice*)
Kaveh Dabashi (*pro hac vice*)
200 Park Avenue
New York, NY 10166
(212) 318-6000
emilypidot@paulhastings.com
kavehdabashi@paulhastings.com

*Counsel for Defendant Google LLC*

17